No. 24-60462

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

STATE OF TENNESSEE; STATE OF MISSISSIPPI; STATE OF ALABAMA; STATE OF GEORGIA; STATE OF INDIANA; STATE OF KANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE OF NEBRASKA; STATE OF OHIO; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; COMMONWEALTH OF VIRGINIA; STATE OF WEST VIRGINIA,

Plaintiffs-Appellees,

v.

XAVIER BECERRA, *Secretary, U.S. Department of Health and Human Services*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; MELANIE FONTES RAINER, *in her official capacity as the Director of the Office for Civil Rights*; CENTERS FOR MEDICARE AND MEDICAID SERVICES; CHIQUITA BROOKS-LASURE, *in her official capacity as Administrator of the Centers for Medicare and Medicaid Services*,

Defendants-Appellants.

On Appeal from the United States District Court
for the Southern District of Mississippi

## BRIEF FOR APPELLANTS

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

CHARLES W. SCARBOROUGH
McKAYE L. NEUMEISTER
*Attorneys, Appellate Staff*
*Civil Division, Room 7231*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8100*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as defendants-appellants are all governmental parties. 5th Cir. R. 28.2.1.

/s/ McKaye L. Neumeister
McKaye L. Neumeister

## STATEMENT REGARDING ORAL ARGUMENT

The district court's preliminary injunction and stay order prevents the Department of Health and Human Services from implementing an important rule that is necessary to fully effectuate Section 1557's prohibition against sex discrimination in health programs. Because the district court's analysis is inconsistent with decisions from numerous other federal courts of appeals and district courts, the federal government believes that oral argument would aid in the consideration of this appeal.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................v

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION ....................................................................3

STATEMENT OF THE ISSUE............................................................................3

STATEMENT OF THE CASE .............................................................................3

    A.    Statutory and Regulatory Background........................................3

    B.    Prior Proceedings...........................................................................9

    C.    Related Litigation .........................................................................11

SUMMARY OF ARGUMENT........................................................................... 13

STANDARD OF REVIEW ............................................................................... 15

ARGUMENT ...................................................................................................... 16

I.    The States Are Unlikely to Prevail on the Merits of Their Challenge................ 16

    A.    Gender-identity discrimination is necessarily a form of discrimination on the basis of sex. ..............................................16

    B.    The States' challenge is unripe. ..................................................24

II.    At a Minimum, the Injunction and Stay Are Overbroad. .................................. 30

    A.    The scope of relief was broader than necessary to address the States' asserted harms regarding gender-affirming care...........................30

    B.    The district court abused its discretion in granting nationwide relief...............................................................................................33

CONCLUSION .................................................................................................. 38

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                   **Page(s)**

*A.C. ex rel. M.C. v. Metropolitan Sch. Dist. of Martinsville*,
  75 F.4th 760 (7th Cir. 2023) ................................................................. 19

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) ............................................................................. 25

*Adams ex rel. Kasper v. School Bd. of St. Johns Cty.*,
  57 F.4th 791 (11th Cir. 2022) .............................................................. 19

*Alabama v. Cardona*,
  No. 7:24-cv-533-ACA, 2024 WL 3607492 (N.D. Ala. July 30, 2024),
  *appeal docketed*, No. 24-12444 (11th Cir. July 30, 2024) ................................ 12

*Alliance for Hippocratic Med. v. U.S. Food & Drug Admin.*,
  78 F.4th 210 (5th Cir. 2023), *rev'd on other grounds*,
  602 U.S. 367 (2024) ......................................................................... 16, 36

*Arizona v. Biden*,
  40 F.4th 375 (6th Cir. 2022) ............................................................. 33-34

*Arkansas v. U.S. Dep't of Educ.*, __F. Supp. 3d__,
  No. 4:24-cv-636-RWS, 2024 WL 3518588 (E.D. Mo. July 24, 2024),
  *appeal docketed*, No. 24-2921 (8th Cir. Sept. 23, 2024) ........................... 12-13

*Arnold, Constable & Co. v. United States*,
  147 U.S. 494 (1893) ............................................................................. 23

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ................................ 2, 4, 6, 14, 18, 19, 20, 21, 23, 24, 31

*Braidwood Mgmt., Inc. v. Becerra*,
  104 F.4th 930 (5th Cir. 2024) .............................................................. 34

*Braidwood Mgmt., Inc. v. EEOC*,
  70 F.4th 914 (5th Cir. 2023) ................................................................. 21

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ................................................................... 30, 33, 36

*Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024) ......................................................... 35, 36, 37

*Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, __F. Supp. 3d__,
   No. 4:24-cv-00461-O, 2024 WL 3381901 (N.D. Tex. July 11, 2024),
   *appeal docketed*, No. 24-10824 (5th Cir. Sept. 10, 2024) ................................12

*Department of Educ. v. Louisiana*,
   603 U.S. 866 (2024) ........................................................................ 13

*Department of Homeland Sec. v. New York*,
   140 S. Ct. 599 (2020) ...................................................................... 33

*Florida v. HHS*, __F. Supp. 3d__, No. 8:24-cv-1080-WFJ-TGW,
   2024 WL 3537510 (M.D. Fla. July 3, 2024) ............................... 11-12, 34, 37

*Franklin v. Gwinnett Cty. Pub. Sch.*,
   503 U.S. 60 (1992) .......................................................................... 21

*Gill v. Whitford*,
   585 U.S. 48 (2018) .................................................................... 15, 33

*Grabowski v. Arizona Bd. of Regents*,
   69 F.4th 1110 (9th Cir. 2023) ........................................................... 19

*Grimm v. Gloucester Cty. Sch. Bd.*,
   972 F.3d 586 (4th Cir.), as amended (Aug. 28, 2020) ........................... 19

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009) ........................................................................ 22

*Haaland v. Brackeen*,
   599 U.S. 255 (2023) ........................................................................ 32

*Jackson v. Birmingham Bd. of Educ.*,
   544 U.S. 167 (2005) ............................................................ 1, 1-2, 24

*Kansas v. U.S. Dep't of Educ.*, __F. Supp. 3d__,
   No. 24-cv-4041-JWB, 2024 WL 3273285 (D. Kan. July 2, 2024),
   *appeal docketed*, No. 24-3097 (10th Cir. July 11, 2024) ........................12

*Labrador v. Poe ex rel. Poe*,
   144 S. Ct. 921 (2024) ................................................................ 30, 34

*Lakoski v. James*,
   66 F.3d 751 (5th Cir. 1995) ..................................................... 14, 18, 22

*Lopez v. City of Houston*,
   617 F.3d 336 (5th Cir. 2010) ........................................................... 25

*Louisiana v. Becerra,*
    20 F.4th 260 (5th Cir. 2021) ............................................................... 34, 36

*Louisiana v. U.S. Dep't of Educ.,* __F. Supp. 3d__,
    No. 3:24-cv-00563, 2024 WL 2978786 (W.D. La. June 13, 2024) ............................13

*Louisiana ex rel. Murrill v. U.S. Dep't of Educ.,*
    No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024) ........................ 13

*Meritor Sav. Bank, FSB v. Vinson,*
    477 U.S. 57 (1986) .................................................................................21

*Monk v. Huston,*
    340 F.3d 279 (5th Cir. 2003) .............................................................. 25

*National Park Hosp. Ass'n v. Department of the Interior,*
    538 U.S. 803 (2003) ......................................................................... 25, 29-30

*Neese v. Becerra,*
    640 F. Supp. 3d 668 (N.D. Tex. 2022) ............................................... 23

*Ohio Forestry Ass'n v. Sierra Club,*
    523 U.S. 726 (1998) ........................................................................... 30

*Oklahoma v. Cardona,* __F. Supp. 3d__,
    No. 5:24-cv-00461-JD, 2024 WL 3609109 (W.D. Okla. July 31, 2024),
    *appeal docketed,* No. 24-6205 (10th Cir. Sept. 27, 2024) .................................13

*Pederson v. Louisiana State Univ.,*
    213 F.3d 858 (5th Cir. 2000) .............................................................. 22

*Pennzoil Co. v. FERC,*
    645 F.2d 394 (5th Cir. 1981) .............................................................. 25

*Rosa H. v. San Elizario Indep. Sch. Dist.,*
    106 F.3d 648 (5th Cir. 1997) .............................................................. 22

*Ryan LLC v. FTC,* __F. Supp. 3d__,
    No. 3:24-cv-00986-E, 2024 WL 3297524 (N.D. Tex. July 3, 2024) ..........................37

*Sample v. Morrison,*
    406 F.3d 310 (5th Cir. 2005) .............................................................. 25

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996) .............................................................................. 21

*Starbucks Corp. v. McKinney*,
  144 S. Ct. 1570 (2024) ................................................................ 35, 36

*Tennessee v. Cardona*, __F. Supp. 3d__,
  No. 2:24-cv-072-DCR, 2024 WL 3019146 (E.D. Ky. June 17, 2024),
  *appeal docketed*, No. 24-5588 (6th Cir. June 26, 2024) ................................12

*Texas v. Becerra*, __F. Supp. 3d__,
  No. 6:24-cv-211-JDK, 2024 WL 3297147 (E.D. Tex. July 3, 2024),
  *modified on reconsideration*, 2024 WL 4490621 (E.D. Tex. Aug. 30, 2024) ...................12

*Texas v. United States*, __F. Supp. 3d__,
  No. 2:24-cv-86-Z, 2024 WL 3405342 (N.D. Tex. July 11, 2024),
  *appeal docketed*, No. 24-10832 (5th Cir. Sept. 13, 2024) ................................12

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985) .......................................................... 25, 26, 29

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ....................................................................... 33

*United States v. Texas*,
  599 U.S. 670 (2023) .................................................................. 34, 37

*United Transp. Union v. Foster*,
  205 F.3d 851 (5th Cir. 2000) .............................................................. 29

*VanDerStok v. Garland*,
  86 F.4th 179 (5th Cir. 2023), *cert. granted*, 144 S. Ct. 1390 (2024) ........................ 37

*Women's Med. Ctr. of Nw. Hous. v. Bell*,
  248 F.3d 411 (5th Cir. 2001) ........................................................... 15-16

## U.S. Constitution:

Art. III, § 2, cl. 1 ....................................................................... 24

## Statutes:

Administrative Procedure Act (APA):
  5 U.S.C. § 705 ............................................................ 2, 9, 16, 35, 36
  5 U.S.C. § 706 ........................................................................... 37

Title VII of the Civil Rights Act of 1964:
    42 U.S.C. § 2000e-2(a)(1) ........................................................................ 4, 18
    42 U.S.C. § 2000e-2(e) ................................................................................. 23

Title IX of the Education Amendments of 1972:
    20 U.S.C. § 1681 *et seq.* ................................................................................ 4
    20 U.S.C. § 1681(a) ................................................................... 4, 16, 18, 20
    20 U.S.C. §§ 1682-1683 ................................................................................ 4
    20 U.S.C. § 1683 ......................................................................................... 29

28 U.S.C. § 1292(a)(1) ...................................................................................... 3

28 U.S.C. § 1331 ................................................................................................ 3

28 U.S.C. § 1346 ................................................................................................ 3

42 U.S.C. § 18116(a) .......................................................................... 3, 4, 16, 29

42 U.S.C. § 18116(c) .......................................................................................... 4

**Regulatory Materials:**

42 C.F.R. § 438.3 ...................................................................................... 11, 17

42 C.F.R. § 438.3(d)(4) ...................................................................................... 8

42 C.F.R. § 438.206 .............................................................................. 8, 11, 17

42 C.F.R. § 440.262 .............................................................................. 8, 11, 17

42 C.F.R. § 460.98 ................................................................................ 8, 11, 17

42 C.F.R. § 460.112 .............................................................................. 8, 11, 17

45 C.F.R. § 80.7 ............................................................................................... 28

45 C.F.R. § 80.7(a)-(d) ...................................................................................... 4

45 C.F.R. § 80.7(c) ........................................................................................... 28

45 C.F.R. § 80.7(d)(1) ..................................................................................... 28

45 C.F.R. § 80.8(a) ..................................................................................... 4, 28

45 C.F.R. § 80.8(c) ........................................................................................... 28

45 C.F.R. § 80.8(d) ............................................................................................. 28

45 C.F.R. § 80.9 .................................................................................................. 28

45 C.F.R. § 80.11 ............................................................................................... 29

45 C.F.R. § 86.71 ............................................................................................... 28

45 C.F.R. § 92.5 .................................................................................................... 8

45 C.F.R. §§ 92.5-.10 .................................................................................. 11, 17

45 C.F.R. § 92.5(a) ............................................................................................ 28

45 C.F.R. § 92.6 .................................................................................................... 8

45 C.F.R. § 92.7 .................................................................................................... 8

45 C.F.R. § 92.8 .................................................................................................... 8

45 C.F.R. § 92.9 .................................................................................................... 8

45 C.F.R. § 92.10 .................................................................................................. 8

45 C.F.R. § 92.101 .............................................................................................. 11

45 C.F.R. § 92.101(a)(2) ................................................................................. 5, 16

45 C.F.R. § 92.101(a)(2)(iv) ............................................................................ 1, 17

45 C.F.R. § 92.206 .......................................................................................... 6, 17

45 C.F.R. §§ 92.206-.211 ................................................................................... 11

45 C.F.R. § 92.206(a) .......................................................................................... 6

45 C.F.R. § 92.206(b)(1) ...................................................................................... 6

45 C.F.R. § 92.206(b)(4) ...................................................................................... 6

45 C.F.R. § 92.206(c) ..................................................................................... 7, 27

45 C.F.R. § 92.207 .......................................................................................... 6, 17

45 C.F.R. § 92.207(b)(3)-(4) ................................................................................. 7

45 C.F.R. § 92.207(c) ................................................................. 7, 27

45 C.F.R. § 92.208-.211 ................................................................. 17

45 C.F.R. § 92.301 ................................................................. 11, 17

45 C.F.R. § 92.303(a) ................................................................. 4

45 C.F.R. §§ 92.303-.304 ................................................................. 11, 17

Exec. Order No. 13,988,
   86 Fed. Reg. 7023 (Jan. 25, 2021) ................................................. 5

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ................................................................. 3

Fed. R. Civ. P. 23 ................................................................. 33

**Legislative Material:**

H.R. Rep. No. 79-1980 (1946) ................................................................. 36

**Other Authorities:**

81 Fed. Reg. 31,375 (May 18, 2016) ................................................. 4

85 Fed. Reg. 37,160 (June 19, 2020) ................................................. 4

86 Fed. Reg. 27,984 (May 25, 2021) ................................................. 5

87 Fed. Reg. 47,824 (Aug. 4, 2022) ................................................. 5

*Nondiscrimination in Health Programs and Activities*,
   89 Fed. Reg. 37,522 (May 6, 2024) ........................................... 1, 6, 8, 9, 16, 19, 26, 27

*Nondiscrimination on the Basis of Sex in Education Programs or Activities*
   *Receiving Federal Financial Assistance*,
   89 Fed. Reg. 33,474 (Apr. 29, 2024) ........................................... 12

**INTRODUCTION**

Section 1557 of the Affordable Care Act prohibits various forms of discrimination in health programs and activities that receive federal financial assistance. The statute does so by incorporating the grounds of discrimination prohibited in various other federal civil rights statutes, including Title IX of the Education Amendments of 1972. Title IX, in turn, prohibits sex discrimination in federally funded education programs and activities. As the Supreme Court has made clear, "Congress gave [Title IX] a broad reach" to cover a "wide range of intentional unequal treatment." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005).

Congress authorized the Department of Health and Human Services (HHS) to issue regulations to implement Section 1557's prohibition on sex discrimination and the other grounds of prohibited discrimination in health programs and activities. In May 2024, HHS exercised that delegated authority by issuing a rule promulgating new implementing regulations for Section 1557. *See Nondiscrimination in Health Programs and Activities*, 89 Fed. Reg. 37,522 (May 6, 2024) (Rule). As relevant here, 45 C.F.R. § 92.101(a)(2)(iv) clarifies that discrimination on the basis of gender identity is necessarily a form of discrimination on the basis of sex. And the Rule contains several provisions explaining how the prohibition on gender-identity discrimination applies in the context of providing healthcare and health insurance coverage. Those provisions effectuate Title IX's "broad" prohibition on sex discrimination, *Jackson*, 544 U.S. at

175—as imported into the health context by Section 1557—and are consistent with precedent of this Court and the Supreme Court.

Plaintiffs' challenge to these provisions is meritless. Section 92.101(a)(2)(iv) flows directly from the plain text of Title IX and the reasoning of the Supreme Court's decision in *Bostock v. Clayton County*, which recognizes that it is "impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 590 U.S. 644, 660 (2020). That essential insight—which the Supreme Court held followed unambiguously from the plain meaning of the phrase "because of sex"—is not confined to Title VII; it applies equally to Title IX's prohibition against discrimination "on the basis of sex," as incorporated by Section 1557.

The district court nevertheless entered a sweeping order barring HHS from enforcing the Rule nationwide with respect to gender-identity discrimination and staying the effective date of relevant provisions under 5 U.S.C. § 705. In so doing, the court erred by refusing to apply *Bostock*'s central teaching to the materially indistinguishable language of Title IX. And the court failed to justify granting nationwide relief that extends well beyond the circumstances in which plaintiffs have asserted any irreparable harm.

This Court should vacate the preliminary injunction and stay order.

## STATEMENT OF JURISDICTION

Plaintiffs asserted jurisdiction under 28 U.S.C. §§ 1331 and 1346. ROA.30. The district court entered a preliminary injunction and stay order on July 3, 2024. *See* ROA.583-615. Defendants timely appealed on August 30, 2024. ROA.672; Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

In May 2024, HHS issued a rule promulgating new regulations implementing Section 1557 of the Affordable Care Act. After finding that plaintiffs were likely to succeed on their challenge to the inclusion of gender-identity discrimination under the Rule, the district court stayed the effective date of the Rule with respect to certain challenged provisions and preliminarily enjoined HHS from enforcing them nationwide to the extent those provisions recognize that sex discrimination includes gender-identity discrimination. The question presented is whether the district court erred in entering the preliminary injunction and § 705 stay.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

Section 1557 of the Affordable Care Act provides that "an individual shall not, on the ground prohibited under" various other civil rights statutes "be subjected to discrimination under, any health program or activity" receiving federal financial assistance. 42 U.S.C. § 18116(a). One of the specified statutes is Title IX of the Education Amendments of 1972, which provides that "[n]o person . . . shall, on the

basis of sex" "be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Congress authorized HHS to "promulgate regulations to implement [Section 1557]." 42 U.S.C. § 18116(c). And Congress established a detailed administrative enforcement scheme requiring HHS to first attempt to secure compliance through voluntary means before it may suspend or terminate federal financial assistance, or refer a matter to the Department of Justice for enforcement. *See* 20 U.S.C. §§ 1682-1683 (incorporated by 42 U.S.C. § 18116(a)); *see also* 45 C.F.R. §§ 80.7(a)-(d), 80.8(a); 45 C.F.R. § 92.303(a).

HHS promulgated regulations implementing Section 1557's prohibition on sex discrimination in 2016, and again in 2020. *See* 81 Fed. Reg. 31,375 (May 18, 2016) (2016 Rule); 85 Fed. Reg. 37,160 (June 19, 2020) (2020 Rule) (rescinding the 2016 Rule's provisions defining sex discrimination). Three days after HHS submitted the 2020 Rule for publication in the Federal Register, the Supreme Court held that the prohibition on discrimination "because of … sex" in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), necessarily encompasses discrimination because of sexual orientation or gender identity. *See Bostock v. Clayton County*, 590 U.S. 644, 660 (2020). Following *Bostock*, and after a change in administration, the President issued an executive order explaining that "[u]nder *Bostock*'s reasoning, laws that prohibit sex discrimination—including Title IX of the Education Amendments of 1972, as amended (20 U.S.C. [§] 1681 *et seq.*) …—prohibit discrimination on the basis of gender identity or sexual orientation, so long as the laws do not contain sufficient indications to the

4

contrary." Exec. Order No. 13,988, 86 Fed. Reg. 7023, 7023 (Jan. 25, 2021) (citations omitted). The President thus directed agencies to "consider whether to" take any actions "necessary to fully implement statutes that prohibit sex discrimination," "consistent with applicable law." *Id.* at 7024. In May 2021, HHS issued a notification to inform the public that, consistent with *Bostock* and Title IX, HHS would interpret and enforce Section 1557's prohibition on sex discrimination as including discrimination based on sexual orientation and gender identity. 86 Fed. Reg. 27,984 (May 25, 2021) (2021 Notice of Interpretation).

In July 2022, HHS issued a Notice of Proposed Rulemaking, which—among other things—proposed to interpret Section 1557's prohibition against sex discrimination to include discrimination based on gender identity. 87 Fed. Reg. 47,824 (Aug. 4, 2022). Following an extensive public engagement process, HHS issued the final Rule on May 6, 2024. The Rule made numerous changes to the Section 1557 regulations.

As particularly relevant here, the Rule contains a number of provisions pertinent to the statutory prohibition on sex discrimination. Section 92.101(a)(2) describes the scope of prohibited sex discrimination under Section 1557. It provides that "[d]iscrimination on the basis of sex includes, but is not limited to, discrimination on the basis of: (i) Sex characteristics, including intersex traits; (ii) Pregnancy or related conditions; (iii) Sexual orientation; (iv) Gender identity; and (v) Sex stereotypes." 45 C.F.R. § 92.101(a)(2). HHS explained that "the inclusion of 'sexual orientation' and

'gender identity' in § 92.101(a)(2) is consistent with the Supreme Court's reasoning in *Bostock*." 89 Fed. Reg. at 37,574. And HHS determined that it was "not necessary to define 'sex' in this rule," observing that in *Bostock* the "Supreme Court did not define the term 'sex'"; instead the Court explained that nothing in its analysis "turned on the debate over whether 'sex' was limited to 'biological distinctions between male and female,' and the Court therefore proceeded on the assumption that 'sex' carried that meaning." *Id.* at 37,575 (quoting *Bostock*, 590 U.S. at 655).

The Rule also addresses equal program access on the basis of sex, 45 C.F.R. § 92.206, and insurance coverage, *id.* § 92.207. Section 92.206 applies primarily to those that provide direct healthcare services to patients, such as hospitals, and requires the provision of "equal access to [a provider's] health programs and activities without discriminating on the basis of sex." *Id.* § 92.206(a). For instance, § 92.206(b)(1) provides that covered providers must not "[d]eny or limit health services … to an individual based upon the individual's sex assigned at birth, gender identity, or gender otherwise recorded." *Id.* § 92.206(b)(1). Accordingly, under (b)(1), a healthcare provider could not refuse to treat the broken arm of a transgender patient because of that patient's gender identity. Another provision within this section additionally precludes covered providers from denying or limiting health services sought for the purpose of gender-affirming care "that the covered entity would provide to an individual for other purposes if the denial or limitation is based on an individual's sex assigned at birth, gender identity, or gender otherwise recorded." *Id.* § 92.206(b)(4).

Section 92.206 explains, however, that it does not "require[] the provision of any health service where the covered entity has a legitimate, nondiscriminatory reason for denying or limiting that service, including where … the covered entity reasonably determines that such health service is not clinically appropriate for a particular individual." *Id.* § 92.206(c). This provision thus makes clear that no violation of Section 1557 occurs where the denial is based on "a legitimate, nondiscriminatory reason" and not "unlawful animus or bias," or does not "constitute a pretext for discrimination." *Id.*

Section 92.207 contains specific prohibitions applicable to covered entities that provide insurance or other health-related coverage, including provisions prohibiting insurance issuers from "deny[ing] or limit[ing] coverage" "based upon" an individual's "gender identity," and precluding insurance issuers from "hav[ing] or implement[ing] a categorical coverage exclusion or limitation for all health services related to gender transition or other gender-affirming care." 45 C.F.R. § 92.207(b)(3)-(4). Again, however, § 92.207 makes clear that it does not "require[] coverage of any health service where the covered entity has a legitimate, nondiscriminatory reason for denying or limiting coverage of the health service or determining that such health service fails to meet applicable coverage requirements, including reasonable medical management techniques such as medical necessity requirements." *Id.* § 92.207(c). As with program access under § 92.206, a "coverage denial or limitation must not be based on unlawful animus or bias, or constitute a pretext for discrimination." *Id.* Where a "medical necessity determination" to deny coverage constitutes a "bona fide medical judgment,"

it would not amount to impermissible discrimination under § 92.207.  *See* 89 Fed. Reg.

at 37,613.

Beyond these provisions explaining how the prohibition on gender-identity

discrimination applies in the context of providing healthcare and health insurance

coverage, the Rule contains a number of provisions that are relevant to implementing

the prohibition on sex discrimination more generally—without specific regard to

whether that prohibition covers gender identity or gender-affirming care.[1]  *See, e.g.,*

45 C.F.R. § 92.5 (requiring assurance of nondiscrimination); *id.* § 92.6 (addressing

remedial and voluntary actions by recipients); *id.* § 92.7 (requiring Section 1557

coordinator); *id.* § 92.8 (requiring written nondiscrimination policy); *id.* § 92.9

(governing training); *id.* § 92.10 (addressing notice of nondiscrimination).  The Rule's

---

[1] The Rule also revised nondiscrimination provisions of certain Centers for Medicare & Medicaid Services (CMS) regulations governing Medicaid, Programs of All-Inclusive Care for the Elderly (PACE), the Children's Health Insurance Program (CHIP), health insurance exchanges, and certain plans in the commercial health insurance market.  *See* 89 Fed. Reg. at 37,666-75.  For example, those CMS regulations require contracts between states and Medicaid and CHIP managed care plans to include provisions that preclude discrimination against enrollees.  As relevant here, § 438.3(d)(4) adds discrimination on the basis of gender identity to the list of provisions prohibiting sex-based discrimination that must be included in such contracts.  42 C.F.R. § 438.3(d)(4); *see also id.* § 438.206 (addressing the delivery of services by managed care plans in a culturally competent manner); *id.* § 440.262 (requiring state Medicaid programs, both fee-for-service and managed care, to have methods to promote access and delivery of services in a culturally competent manner, regardless of sex, including gender identity); *id.* § 460.98 (prohibiting PACE organizations from discriminating against PACE participants based on sex, including gender identity); *id.* § 460.112 (providing that PACE participants have the right not to be discriminated against in the delivery of required PACE services based on sex, including gender identity).

effective date was July 5, 2024 (unless otherwise specified for certain provisions).  89 Fed. Reg. at 37,693.

### B.     Prior Proceedings

Plaintiffs are 15 States: Tennessee, Mississippi, Alabama, Georgia, Indiana, Kansas, Kentucky, Louisiana, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, Virginia, and West Virginia (collectively, States).  The States brought this action under the Administrative Procedure Act (APA).  Specifically, the States challenged the Rule's treatment of gender-identity discrimination and sought preliminary-injunctive relief and a stay of the Rule's effective date, claiming that the application of the Rule with respect to the provision of gender-affirming care will cause them irreparable harm.  *See* ROA.73-80 (Complaint); ROA.491-494 (Preliminary Injunction (P.I.) Motion).

On July 3, 2024, the district court entered a nationwide stay of the effective date of the Rule under 5 U.S.C. § 705 with respect to the Rule's treatment of "discrimination on the basis of sex to include discrimination on the basis of gender identity" in a number of provisions in the Rule.  ROA.614.  The court also issued a nationwide preliminary injunction barring defendants from enforcing the Rule "to the extent that [it] provides that 'sex' discrimination encompasses gender identity."  ROA.615.  The court held that the States were substantially likely to succeed on the merits of their claim that "HHS exceeded its statutory authority by applying the *Bostock* holding to Section 1557's incorporation of Title IX" in the Rule.  ROA.604-605.

According to the district court, in prohibiting discrimination on the basis of sex in Title IX, Congress "meant biological sex, i.e., discrimination between males and females." ROA.597 (quotation marks omitted); *see* ROA.602-603. The court rejected HHS's reliance on *Bostock*, which it concluded "does not apply to Title IX because Congress used different causation language in Title IX … and Title VII." ROA.598-599. The court further concluded that as part of Spending Clause legislation, requirements under Title IX and Section 1557 must be clear, and that—in the court's view—Title IX's express reference only to "sex" does not clearly prohibit discrimination based on gender identity. ROA.600-601.[2]

As to the remaining factors, the district court concluded that the States faced irreparable harm "in the form of either nonrecoverable compliance costs or the loss of federal funds without the Court's immediate intervention." ROA.605. The court explained that some of the States' health programs "do not provide coverage for gender-transition surgeries" or are barred from providing certain coverage, and the States would be required to either change those programs to avoid losing federal funding or incur increased costs to cover those procedures. ROA.605-606. And the court concluded that neither HHS nor the public interest would be harmed because relief would "merely preserve the status quo." ROA.609.

---

[2] In light of this holding, the court declined to address plaintiffs' other bases for challenging the Rule. ROA.593; *see* ROA.486-491 (raising additional arguments).

With respect to the scope of relief, the district court stayed the effective date of the Rule as to a list of challenged provisions, "in so far as these regulations are intended to extend discrimination on the basis of sex to include discrimination on the basis of gender identity." ROA.610.[3] The court further enjoined HHS from "enforcing, relying on, implementing, or otherwise acting pursuant to the [Rule's] provisions concerning gender identity." ROA.610. And the court declined to issue relief limited to the 15 plaintiff States, instead providing that its preliminary injunction and § 705 stay would apply nationwide. ROA.610-611.

### C.     Related Litigation

**1.**     Several other challenges to the Section 1557 Rule are currently pending in courts in this Circuit and elsewhere. *See Texas v. Becerra*, No. 24-40568 (5th Cir. filed Sept. 5, 2024) (opening brief due Nov. 27, 2024); *Florida v. HHS*, No. 24-12826 (11th Cir. filed Sept. 4, 2024) (opening brief due Jan. 2, 2025); *Catholic Benefits Ass'n v. Becerra*, No. 3:23-cv-203 (D.N.D. filed Oct. 13, 2023) (dispositive motions pending); *McComb Childrens Clinic, Ltd. v. Becerra*, No. 5:24-cv-48 (S.D. Miss. filed May 13, 2024) (dispositive motions pending); *Missouri v. Becerra*, No. 4:24-cv-937 (E.D. Mo. filed July 10, 2024) (awaiting scheduling order). Two other district courts have issued similar orders staying and/or enjoining enforcement of the Rule. *See Florida v. HHS*, \_\_F. Supp. 3d\_\_, No.

---

[3] The list includes various provisions in the Section 1557 regulations and CMS regulations which could be relevant to carrying out the prohibition on gender-identity discrimination: 42 C.F.R. §§ 438.3, 438.206, 440.262, 460.98, 460.112; 45 C.F.R. §§ 92.5-.10, 92.101, 92.206-.211, 92.301, 92.303-.304. ROA.614.

8:24-cv-1080-WFJ-TGW, 2024 WL 3537510 (M.D. Fla. July 3, 2024); *Texas v. Becerra*,

__F. Supp. 3d__, No. 6:24-cv-211-JDK, 2024 WL 3297147 (E.D. Tex. July 3, 2024),

*modified on reconsideration*, 2024 WL 4490621 (E.D. Tex. Aug. 30, 2024).

**2.**    There is ongoing litigation raising similar legal questions in cases

challenging a final rule issued by the Department of Education that implements Title

IX's prohibition on sex discrimination in education programs. *See Nondiscrimination on*

*the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89

Fed. Reg. 33,474 (Apr. 29, 2024). Similar to the Section 1557 Rule, the Title IX rule

also clarifies that discrimination on the basis of gender identity is necessarily a form of

discrimination on the basis of sex. Particularly relevant here is one of the challenges to

the Title IX rule currently pending in this Court. *See Louisiana ex rel. Murrill v. U.S. Dep't*

*of Educ.*, No. 24-30399 (5th Cir. filed June 25, 2024) (oral argument held Nov. 4, 2024).[4]

---

[4] Numerous other challenges to the Title IX rule are pending in cases around the country. *See Alabama v. Cardona*, No. 7:24-cv-533-ACA, 2024 WL 3607492 (N.D. Ala. July 30, 2024) (denying preliminary injunction), *appeal docketed*, No. 24-12444 (11th Cir. July 30, 2024) (oral argument scheduled for Dec. 18, 2024); *Tennessee v. Cardona*, __F. Supp. 3d__, No. 2:24-cv-072-DCR, 2024 WL 3019146 (E.D. Ky. June 17, 2024) (granting preliminary injunction), *appeal docketed*, No. 24-5588 (6th Cir. June 26, 2024) (oral argument held Oct. 30, 2024); *Kansas v. U.S. Dep't of Educ.*, __F. Supp. 3d__, No. 24-cv-4041-JWB, 2024 WL 3273285 (D. Kan. July 2, 2024) (granting preliminary injunction), *appeal docketed*, No. 24-3097 (10th Cir. July 11, 2024) (reply brief filed Oct. 29, 2024); *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, __F. Supp. 3d__, No. 4:24-cv-00461-O, 2024 WL 3381901 (N.D. Tex. July 11, 2024) (granting preliminary injunction), *appeal docketed*, No. 24-10824 (5th Cir. Sept. 10, 2024) (appeal stayed); *Texas v. United States*, __F. Supp. 3d__, No. 2:24-cv-86-Z, 2024 WL 3405342 (N.D. Tex. July 11, 2024) (granting preliminary injunction), *appeal docketed*, No. 24-10832 (5th Cir. Sept. 13, 2024) (appeal stayed); *Arkansas v. U.S. Dep't of Educ.*, __F. Supp. 3d__, No. 4:24-cv-636-RWS,

*Continued on next page.*

In *Louisiana*, the district court entered a preliminary injunction barring the Department of Education from enforcing the Title IX rule within the plaintiff states. *See Louisiana v. U.S. Dep't of Educ.*, __F. Supp. 3d__, No. 3:24-cv-00563, 2024 WL 2978786, at *21 (W.D. La. June 13, 2024). The Department of Education sought to partially stay the injunction, and this Court denied the request. *See Louisiana ex rel. Murrill v. U.S. Dep't of Educ.*, No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024) (per curiam). The federal government then asked the Supreme Court to partially stay the injunction pending appeal, and the Court denied the application. *Department of Educ. v. Louisiana*, 603 U.S. 866 (2024) (per curiam). The *Louisiana* appeal has since proceeded to briefing and oral argument in this Court.

## SUMMARY OF ARGUMENT

**I.**    The district court erred in holding that the Rule is likely unlawful in its application to gender-identity discrimination.

**A.**    The Rule's provision addressing the scope of prohibited sex discrimination (§ 92.101(a)(2)) properly recognizes that gender-identity discrimination is necessarily a form of sex discrimination. That conclusion follows directly from the plain statutory text of Title IX, which Section 1557 incorporates as relevant here, and

---

2024 WL 3518588 (E.D. Mo. July 24, 2024) (granting preliminary injunction), *appeal docketed*, No. 24-2921 (8th Cir. Sept. 23, 2024) (opening brief filed Nov. 18, 2024); *Oklahoma v. Cardona*, __F. Supp. 3d__, No. 5:24-cv-00461-JD, 2024 WL 3609109 (W.D. Okla. July 31, 2024) (granting preliminary injunction), *appeal docketed*, No. 24-6205 (10th Cir. Sept. 27, 2024) (opening brief filed Nov. 19, 2024).

from the reasoning of *Bostock v. Clayton County*, 590 U.S. 644 (2020), which interpreted materially identical language in Title VII and concluded that gender-identity discrimination necessarily involves sex discrimination. That is so, as *Bostock* made clear, even assuming that "sex" is understood to refer only to "biological distinctions between male and female." *Id.* at 655 (quotation marks omitted).

None of the district court's reasons for distinguishing *Bostock* withstands scrutiny. As this Court has recognized, "the prohibitions of discrimination on the basis of sex [in] Title IX and Title VII are the same." *Lakoski v. James*, 66 F.3d 751, 756-57, 756 n.3 (5th Cir. 1995). Title IX sets out a causation standard no more stringent than Title VII's but-for standard, and this Court has consistently looked to Title VII case law to interpret Title IX. Moreover, Title IX's various exemptions do not suggest that Title IX's core prohibition against discrimination "on the basis of sex" can be read differently than Title VII's prohibition on discrimination "because of sex." The district court ran afoul of basic rules of statutory interpretation in concluding that "sex discrimination" carries different meanings in materially identical statutory texts.

The court was also wrong to conclude that the Spending Clause precludes the recognition that sex discrimination encompasses gender-identity discrimination. As the Supreme Court made clear in *Bostock*, the conclusion that gender-identity discrimination is a form of sex discrimination flows clearly from the statutory text, even assuming that the definition of sex is limited to "biological distinctions between male and female." 590 U.S. at 655. Because Title IX and Section 1557 themselves unambiguously prohibit

14

discrimination on the basis of gender identity, clear-statement principles premised on the Spending Clause have no application to the Rule.

**B.**     The States are also unlikely to succeed on the merits because their challenge is premature.  The States fear the loss of federal funding based on gender-affirming care policies that allegedly violate the Rule.  But any potential future enforcement action against plaintiffs for violating the Rule depends on a series of speculative contingencies that may never come to pass.  And postponing judicial review would not harm the States, given their ability to raise these same objections in the context of HHS administrative proceedings and subsequent judicial review.

**II.**     Finally, the preliminary injunction and § 705 stay are, at a minimum, substantively and geographically overbroad.  The scope of relief issued by the district court—applying nationwide and to circumstances beyond the provision or coverage of gender-affirming medical care—vastly exceeded what was necessary to redress "the plaintiff[s'] particular injury."  *Gill v. Whitford*, 585 U.S. 48, 73 (2018).

Accordingly, this Court should vacate the district court's preliminary injunction and § 705 stay order or, at a minimum, narrow the scope of relief to remedy only the asserted injuries of the specific plaintiff States.

## STANDARD OF REVIEW

This Court reviews the district court's "ultimate decision whether to grant or deny a preliminary injunction" for "abuse of discretion," but any legal conclusions supporting that decision are reviewed "*de novo.*"  *Women's Med. Ctr. of Nw. Hous. v. Bell,*

248 F.3d 411, 418-19 (5th Cir. 2001). This Court applies the preliminary-injunction factors and the same standard of review in evaluating stays under 5 U.S.C. § 705. *See Alliance for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 242 (5th Cir. 2023), *rev'd on other grounds*, 602 U.S. 367 (2024).

## ARGUMENT

### I.  The States Are Unlikely to Prevail on the Merits of Their Challenge.

####    A.  Gender-identity discrimination is necessarily a form of discrimination on the basis of sex.

Title IX prohibits discrimination "on the basis of sex," 20 U.S.C. § 1681(a), and Section 1557 incorporates that ground of prohibited discrimination, 42 U.S.C. § 18116(a). Section 92.101(a)(2) of the Rule describes the scope of that prohibition, explaining that "[d]iscrimination on the basis of sex includes, but is not limited to, discrimination on the basis of: (i) Sex characteristics, including intersex traits; (ii) Pregnancy or related conditions; (iii) Sexual orientation; (iv) Gender identity; and (v) Sex stereotypes." 45 C.F.R. § 92.101(a)(2). HHS explained that this provision addresses a "non-exhaustive list of what constitutes discrimination on the basis of sex," and noted the Supreme Court's observation in *Bostock* that nothing in the Court's decision "turned on the debate over whether 'sex' was limited to 'biological distinctions between male and female.'" 89 Fed. Reg. at 37,575. Each form of discrimination listed in § 92.101(a)(2) necessarily involves the consideration of a person's sex, even if "sex" refers only to biological differences between sexes.

16

The States' challenge here focuses on the Rule's inclusion of gender-identity discrimination as a form of sex discrimination, which is specifically provided in § 92.101(a)(2)(iv) and effectuated through various other provisions. *See* ROA.413-414.[5] The district court rejected the Rule's recognition that the Supreme Court's reasoning in *Bostock*, when applied to the text of Title IX as incorporated by Section 1557, leads naturally to the conclusion that discrimination based on gender identity is necessarily a form of discrimination "on the basis of sex." *See* ROA.595-605 (quotation marks

---

[5] Although the district court's stay and injunction apply to various provisions of the Rule, the merits analysis as to all of those provisions for the claim on review turns on whether the prohibition on sex discrimination in Title IX, as incorporated by Section 1557, encompasses gender-identity discrimination. The court expressly enjoined HHS from "enforcing, relying on, implementing, or otherwise acting pursuant to" the Rule "to the extent that the [Rule] provides that 'sex' discrimination encompasses gender identity." ROA.615. And the court stayed the effective date of the Rule "in so far as the [Rule] is intended to extend discrimination on the basis of sex to include discrimination on the basis of gender identity" in a list of specific provisions. ROA.614. The listed provisions include § 92.101—which describes the scope of prohibited sex discrimination under Section 1557 as including gender-identity discrimination, 45 C.F.R. § 92.101(a)(2)(iv)—§§ 92.206 and 92.207—which effectuate the prohibition on gender-identity discrimination with respect to equal program access and insurance coverage, *id.* §§ 92.206, 92.207—and additional provisions in the Section 1557 regulations and CMS regulations that could be relevant to carrying out the prohibition on gender-identity discrimination. *See* 42 C.F.R. §§ 438.3, 438.206, 440.262, 460.98, 460.112 (CMS regulations); 45 C.F.R. §§ 92.5-.10 (general Section 1557 provisions); *id.* §§ 92.208-.211 (other specific applications of the prohibition on sex discrimination to health programs and activities); *id.* §§ 92.301, 92.303-.304 (procedural provisions regarding enforcement). Although the district court's relief extends more broadly to other provisions of the Rule, because the core issue of the scope of prohibited sex discrimination under Section 1557 is specifically addressed in 45 C.F.R. § 92.101(a)(2)(iv), the discussion herein focuses on that overarching provision. Demonstrating that HHS did not exceed its statutory authority in promulgating § 92.101(a)(2)(iv) is sufficient to dispose of the States' claim at issue in its entirety.

omitted). But the reasons the district court gave for that conclusion have no foundation in the text of the statutes and cannot be squared with the Supreme Court's analysis in *Bostock.*

 **1.** Section 92.101(a)(2)(iv) reflects a straightforward application of *Bostock*'s reasoning. There, the Supreme Court construed the provision of Title VII making it unlawful "for an employer … to discriminate against any individual … because of such individual's … sex." *Bostock*, 590 U.S. at 655 (quoting 42 U.S.C. § 2000e-2(a)(1)). The Supreme Court explained that Title VII's "because of" language "incorporates the 'simple' and 'traditional' standard of but-for causation." *Id.* at 656 (quotation marks omitted). "[S]ex is necessarily a but-for cause" of discrimination on the basis of sexual orientation or gender identity, the Court explained, "because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* at 660-61 (emphasis omitted). Such discrimination would, for example, "penalize[] a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth." *Id.* at 660. That is true even on the assumption that "sex" in Title VII "refer[s] only to biological distinctions between male and female." *Id.* at 655 (quotation marks omitted).

 *Bostock*'s reasoning applies with equal force to Title IX's prohibition against discrimination "on the basis of sex." 20 U.S.C. § 1681(a). Title IX imposes a causation standard no more stringent than but-for causation under Title VII. *See Lakoski v. James*, 66 F.3d 751, 756-57, 756 n.3 (5th Cir. 1995) ("[T]he prohibitions of discrimination on

the basis of sex [in] Title IX and Title VII are the same."). And as *Bostock* made clear, "sex is necessarily a but-for cause" of discrimination on the basis of sexual orientation or gender identity. 590 U.S. at 661 (emphasis omitted). A school under Title IX (or a healthcare provider under Section 1557), no less than an employer under Title VII, engages in sex discrimination when it "penalizes a person … for traits or actions that it tolerates" in persons identified as a different sex "at birth." *Id.* at 660. That is why various courts have concluded that, in light of *Bostock*, discrimination on the basis of sexual orientation or gender identity are necessarily forms of prohibited sex discrimination under Title IX. *See, e.g.*, *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir.), as amended (Aug. 28, 2020); *A.C. ex rel. M.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023). That conclusion does not depend, as HHS recognized, on viewing the term "sex" in Title IX and Section 1557 to mean anything other than "'biological distinctions between male and female.'" 89 Fed. Reg. at 37,575 (quoting *Bostock*, 590 U.S. at 655).

    **2.**    None of the district court's reasons for rejecting that conclusion is valid. The court endorsed the notion that the meaning of the term "sex" at the time of Title IX's passage referred only to "'biological sex,'" such that sex discrimination meant "'discrimination between males and females.'" ROA.596-598 (quoting *Adams ex rel. Kasper v. School Bd. of St. Johns Cty.*, 57 F.4th 791, 812 (11th Cir. 2022)). But the Rule does not purport to redefine "sex." 89 Fed. Reg. at 37,575 ("[HHS Office for Civil

Rights (OCR)] has determined it is not necessary to define 'sex' in this rule ….").  It simply applies the same reasoning that the Supreme Court applied in *Bostock* to determine that discrimination on the basis of gender identity is necessarily discrimination on the basis of sex, even assuming a definition of sex tied to "biological distinctions between male and female."  *Bostock*, 590 U.S. at 655.

The district court also seemed to dismiss *Bostock*'s relevance on the ground that the decision arose in the context of a Title VII claim.  ROA.598-601.  But *Bostock*'s core insight—that "it is impossible to discriminate against a person for being … transgender without discriminating against that individual *based on* sex," 590 U.S. at 660 (emphasis added)—applies equally to Title IX and Section 1557.  If an employer "fires a transgender person who was identified as a male at birth but who now identifies as a female" yet "retains an otherwise identical employee who was identified as female at birth," the employer has engaged in discrimination based on sex assigned at birth because it has "intentionally penalize[d] a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth."  *Id.*  Exactly the same is true in the healthcare context:  A healthcare provider that refuses to treat the broken arm of a transgender woman who was assigned male at birth because of her gender identity has engaged in discrimination "on the basis of sex," 20 U.S.C. § 1681(a), because that provider has penalized her for traits it would have tolerated in an otherwise identical patient identified as female at birth.  And as the Supreme Court has made clear, lower courts are bound not only by "the holdings of … prior cases, but also to their

explications of the governing rules of law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (quotation marks omitted).  Plaintiffs may disagree with what the Supreme Court said about sex discrimination in *Bostock*, but there is no basis for refusing to apply its reasoning to a statute with functionally identical text.

The district court emphasized that "Congress used different causation language in Title IX ('on the basis of sex') and Title VII ('because of … sex')."  ROA.598-599 (alteration in original); *see* ROA.602 (noting the "different language in Title VII and Title IX").  But the court nowhere explained how Title VII's prohibition on discrimination "because of" sex means something different than Title IX's prohibition on discrimination "on the basis of" sex.  In *Bostock* itself, the Supreme Court substituted the phrase "on the basis of" for Title VII's "because of" formulation at least eight times. *See, e.g.*, 590 U.S. at 650 (noting that "in Title VII, Congress outlawed discrimination in the workplace *on the basis of* race, color, religion, sex, or national origin" (emphasis added)); *see also Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (explaining that Title IX imposes "the duty not to discriminate on the basis of sex, and 'when a supervisor sexually harasses a subordinate *because of* the subordinate's sex, that supervisor "discriminate[s]" *on the basis of* sex'" (alteration in original) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)) (emphases added)).  This Court has similarly used the phrases interchangeably in describing Title VII and Title IX.  *See Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 918 (5th Cir. 2023) (explaining *Bostock*'s holding that Title VII bars discrimination based on sexual orientation because it is

"discrimination … '*on the basis of* sex'" (emphasis added)); *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 880 (5th Cir. 2000) (explaining that a Title IX violation is present where an "institution intended to treat women differently *because of* their sex" (emphasis added)).  And in other contexts, the Supreme Court has explained that the ordinary meaning of "the phrase 'based on' indicates a but-for causal relationship" and that the phrase has "the same meaning as the phrase, 'because of.'"  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (quotation marks omitted).

The fact that this Court might not always "*unquestionably* apply Title VII case law to Title IX," ROA.601 (emphasis added) (alteration and quotation marks omitted), does not justify failing to do so here.  The only case cited by the district court in which this Court declined to interpret Title IX consistent with Title VII was not premised on the statutes' causation language, or whether the discrimination at issue was based on sex. *See Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 655-58 (5th Cir. 1997).  Instead, this Court in that case declined to apply constructive-notice principles from Title VII on the basis that Title IX requires "actual, intentional discrimination" by an educational institution and Title VII contains different limits on liability in private actions and directly relevant regulations.  *Id.* at 656-57.  By contrast, this Court has explained that "[a]ny difference between the[ statutes'] prohibitions of sex discrimination is not compelled by statutory language," and both statutes protect "the same right." *Lakoski*, 66 F.3d at 756-57.  And contrary to the district court's suggestion (ROA.602), the fact that *Lakoski* specifically involved *employment* discrimination in education is irrelevant;

22

there is no basis for concluding that Title VII and Title IX proscribe the same forms of sex discrimination in the employment context, but that Title IX otherwise proscribes only a narrower category of sex discrimination.

The district court's observation that Title IX and its regulations contain some provisions that purportedly "presume[] sexual dimorphism" and allow sex separation in some contexts, ROA.602-604 (quoting *Neese v. Becerra*, 640 F. Supp. 3d 668, 680 (N.D. Tex. 2022)),[6] does not compel a different understanding as to the scope of prohibited sex discrimination in the first instance. Title VII also contains statutory exceptions, *see* 42 U.S.C. § 2000e-2(e) (bona fide qualifications), and has long been understood to allow certain forms of sex separation in certain contexts, like "sex-segregated bathrooms, locker rooms, and dress codes," *Bostock*, 590 U.S. at 681. Yet the Supreme Court still held that gender-identity discrimination is necessarily also sex discrimination. Indeed, the presence of statutory provisions that explicitly permit sex differentiation in certain contexts under Title IX only reinforces that Congress understood that Title IX's general prohibition against sex discrimination otherwise applies. *See Arnold, Constable & Co. v. United States*, 147 U.S. 494, 499 (1893) ("[T]he exception of a particular thing from general words proves that, in the opinion of the lawgiver, the thing excepted would be

---

[6] *Neese* involves a challenge by healthcare providers to the 2021 Notice of Interpretation. The federal government appealed from an adverse judgment and the appeal is currently pending in this Court. *See Neese v. Becerra*, No. 23-10078 (5th Cir. filed Jan. 25, 2023) (oral argument held Jan. 8, 2024).

within the general clause had the exception not been made." (quotation marks omitted)).

Nor does the fact that Title IX and Section 1557 were enacted pursuant to the Spending Clause—whereas Title VII was enacted pursuant to the Commerce Clause—provide any basis for concluding that *Bostock*'s reasoning does not apply here.  *See* ROA.600-601.  Quoting *Bostock*, the district court observed that "transgender status" is a "distinct concept[] from sex."  ROA.601 (quoting 590 U.S. at 699).  But again, the Rule did not purport to redefine "sex" to be synonymous with gender identity.  And as already explained, discrimination on the basis of gender identity is necessarily also sex discrimination covered by Title IX's "starkly broad terms," *Bostock*, 590 U.S. at 680, even on the assumption that the statute refers to "biological distinctions between male and female," *id.* at 655.  *Cf. Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174-75 (2005) (holding that Title IX's private right of action encompasses retaliation claims even though the statute does not specifically mention retaliation).  Because Title IX and Section 1557 themselves unambiguously prohibit discrimination on the basis of gender identity, clear-statement principles premised on the Spending Clause have no bearing on the scope of prohibited discrimination in § 92.101(a)(2).

## B.   The States' challenge is unripe.

Article III of the United States Constitution limits federal courts' jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Ripeness is an "essential component[]" of "Article III's case-or-controversy requirement" because a court has

no power to decide disputes that are not yet justiciable. *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam). The purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

In order to assess whether a particular claim is ripe for judicial review, this Court considers both "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (quotation marks omitted). If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (quotation marks omitted). Even when "the question presented" is "purely legal," it is unfit for adjudication where a concrete factual context would facilitate a court's "ability to deal with the legal issues presented." *National Park Hosp. Ass'n v. Department of the Interior*, 538 U.S. 803, 812 (2003) (quotation marks omitted); *see also Pennzoil Co. v. FERC*, 645 F.2d 394, 398 (5th Cir. 1981) (legal issue not ripe where judicial review "would

stand on a much surer footing in the context of an application to a specific factual framework").

In arguing that their challenge is ripe, the States relied on the assertion that the Rule "threatens [them] with the loss of billions of dollars in federal funds."  ROA.556 (P.I. Reply 2); *see* ROA.557 (P.I. Reply 3) ("Plaintiffs 'need not assume such risks while waiting for HHS to drop the hammer.'" (alteration omitted)).[7]  According to the States, for instance, because Tennessee's state-run health programs "do not cover gender-transition surgeries," "Tennessee thus faces a credible threat that HHS will enforce the 2024 Rule against it and terminate its federal funding for those programs."  ROA.492-493 (P.I. Motion 23-24).  But to determine whether the exclusion of coverage for gender-affirming care in Tennessee's or any other plaintiff State's own health programs actually violates the Rule requires significant further factual development.  And the States' feared loss of funding for violating the Rule is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all."  *Thomas*, 473 U.S. at 580-81 (quotation marks omitted).  Accordingly, this challenge is unripe.

As the Rule makes clear, it "does not impose a categorical requirement that covered entities must provide gender-affirming care."  89 Fed. Reg. at 37,596.  Nor does it "specify whether certain benefit design practices are per se discriminatory."  *Id.*

---

[7] The federal government raised ripeness in opposing preliminary relief, ROA.526-527 (P.I. Opposition 20-21), and the States responded, ROA.556-557 (P.I. Reply 2-3).  However, the district court failed to address this objection.

at 37,614. Instead, the Rule provides that healthcare providers and insurers can decline to provide or cover health services where they have a "legitimate, nondiscriminatory reason for denying or limiting" provision or coverage of "that service" and the determination or coverage denial is not "based on unlawful animus or bias," and does not "constitute a pretext for discrimination." 45 C.F.R. §§ 92.206(c), 92.207(c). This includes circumstances where the covered provider "reasonably determines that such health service is not clinically appropriate for a particular individual," *id.* § 92.206(c), or where the covered insurer employs "reasonable medical management techniques such as medical necessity requirements," *id.* § 92.207(c). Where a "medical necessity determination" to deny coverage constitutes a "bona fide medical judgment," it would not amount to impermissible discrimination under the Rule. *See* 89 Fed. Reg. at 37,613.

The Rule thus draws a careful line between denying gender-affirming care as the result of reasonable medical determinations—which is permissible—and denying such care as the result of animus—which is not. And in policing that line, as the Rule explains, the determination by OCR "of whether a challenged action is discriminatory is necessarily a fact-specific, case-by-case analysis dependent on the facts of the particular situation." 89 Fed. Reg. at 37,616. Providers and insurers thus have the opportunity "to articulate a legitimate, nondiscriminatory justification for an alleged discriminatory action, which OCR will scrutinize to ensure it is not a pretext for discrimination." *Id.*

The States do not allege that HHS has engaged in this fact-specific, case-by-case analysis under the Rule with respect to any of the States' health programs and their approach to the provision or coverage of gender-affirming care.  Nor do they allege that HHS has even initiated the extensive administrative process that would need to precede any suspension of federal funding for violating the Rule.  HHS's enforcement under Section 1557 through OCR is typically a complaint-driven process, though OCR also has authority to initiate investigations on its own.  *See* 45 C.F.R. § 80.7; *see also id.* §§ 86.71, 92.5(a).  As part of an investigation, OCR considers all "factors relevant to a determination as to whether the recipient has failed to comply" with Section 1557's requirements, *id.* § 80.7(c), including any bona fide medical judgments regarding the medical necessity of treatment.  If an investigation finds a "failure to comply," OCR must attempt to secure voluntary compliance through informal means.  *Id.* § 80.7(d)(1).  If such efforts fail, OCR makes a written finding that the recipient is in violation of the requirements of Section 1557 and makes further attempts at voluntary resolution.  *Id.* § 80.8(d).  If these prove unsuccessful, OCR can either refer the matter to the Department of Justice with a recommendation that appropriate proceedings be brought to enforce Section 1557's requirements or begin administrative proceedings to suspend or terminate federal financial assistance.  *Id.* § 80.8(a), (c).  To terminate federal funding, specifically, OCR must conduct a formal administrative hearing and provide 30 days' advance notice to the relevant congressional committees, including "a full written report of the circumstances and the grounds for such action."  *Id.* § 80.8(c); *see id.* § 80.9

(hearing requirements). A final decision to suspend or terminate funding resulting from these administrative proceedings is subject to judicial review. *Id.* § 80.11; *see* 20 U.S.C. § 1683 (incorporated by 42 U.S.C. § 18116(a)).

On the basis of the States' allegations, it is entirely speculative at this point whether OCR will initiate any investigation under the Rule into the handling of gender-affirming care in the States' health programs, what the States' asserted justifications would be for their policies, whether OCR would find that any such justification was actually a pretext for discrimination and that the programs were in violation of the Rule, and whether efforts at informal, voluntary compliance would be unsuccessful. Then, and only then, would the States potentially be subject to an enforcement action by the federal government for violating the Rule. *See* ROA.556 (P.I. Reply 2) (asserting that challenge is ripe because Rule "threatens Plaintiffs with the loss of billions of dollars in federal funds"). Because these "contingent future events … may not occur as anticipated, or indeed may not occur at all," the States' challenge is premature. *Thomas*, 473 U.S. at 580-81 (quotation marks omitted); *see United Transp. Union v. Foster*, 205 F.3d 851, 858 (5th Cir. 2000) (finding claims unripe where "train of events [that] would necessarily have to occur" was based on "conjecture and speculation").

Postponing any judicial review until after HHS has pursued this administrative process, when the States' feared harms of losing federal funding become more than merely speculative, would cause no hardship. "[M]ere uncertainty" does not "constitute[] a hardship for purposes of the ripeness analysis." *National Park*, 538 U.S.

at 811. In the event OCR ever does initiate an investigation into their healthcare programs for violating the Rule, the States would have the ability to raise their arguments in that administrative proceeding and subsequent judicial review. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 729-30, 733-34 (1998) (holding that case was not ripe where the plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain," and noting that there would be an administrative process before plaintiffs would face any "practical harm").

The district court thus erred in permitting the States to prematurely obtain judicial review of their APA challenge premised on the speculative and contingent fear that they will lose federal funding for their state-run health programs.

## II.   At a Minimum, the Injunction and Stay Are Overbroad.

### A.   The scope of relief was broader than necessary to address the States' asserted harms regarding gender-affirming care.

The district court erred in staying and enjoining enforcement of the Rule's challenged provisions to the extent they reflect a general prohibition on gender-identity discrimination because the breadth of this relief was not necessary to remedy the States' asserted injuries and thus violates the traditional principle that equitable relief should be no "more burdensome to the defendant than necessary" to redress the plaintiffs' injuries. *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring in the grant of stay) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

By attacking HHS's understanding of the scope of discrimination "on the basis of sex"—as expressly reflected in § 92.101(a)(2)(iv)—the States claim that they can "discriminate against a person for being … transgender without discriminating against that individual based on sex." *Bostock*, 590 U.S. at 660. On the States' view, it would be perfectly lawful under Title IX and Section 1557 for them to punish transgender patients "simply for being … transgender," *id.* at 651, by, for example, barring them from receiving treatment for a broken arm. The States have never suggested they wish to engage in such plainly discriminatory conduct or that they would be harmed by being required to refrain from it. Rather, they only claim harms related to the coverage and provision of gender-affirming medical treatment.

The States contend that they will be irreparably harmed if they are required to use "taxpayer funds to pay for" gender-affirming medical treatment "through Medicaid and state health plans." ROA.19 (Complaint ¶ 1); *see* ROA.493 (P.I. Motion 24) (discussing "increased costs for Plaintiff States' health plans" from the alleged requirement to "cover gender-transition drugs and surgeries"); ROA.75-79 (Complaint ¶¶ 206-227). And the States assert harm to their "sovereign interests" in enforcing "laws prohibiting healthcare providers from offering gender-transition interventions to minors" and prohibitions on coverage for gender-affirming care in "Medicaid, CHIP, or state-employee health programs." ROA.492 (P.I. Motion 23); *see* ROA.73-74 (Complaint ¶¶ 202-205). Relatedly, the States fear the termination of their federal funding because state "programs do not cover gender-transition surgeries." ROA.493

(P.I. Motion 24); *see* ROA.75 (Complaint ¶¶ 206-211).[8]  The States also try to rely on purported harms to their citizens from the "side effects" and "health risks" of receiving gender-affirming care.  ROA.493 (P.I. Motion 24); *see* ROA.80 (Complaint ¶¶ 228-232).  *But see Haaland v. Brackeen*, 599 U.S. 255, 294-95 (2023) (reaffirming that states cannot rely on interests of their citizens as *parens patriae* in suit against federal government).

Even assuming that some relief were appropriate here, the States' specific alleged harms could be remedied by staying the effective date of the Rule and enjoining its enforcement only insofar as it would require the coverage or provision of gender-affirming medical treatments.  With respect to the substantive scope of relief, there would be no need for the district court to stay the Rule and enjoin its enforcement more broadly.  The district court thus abused its discretion in granting relief against the Rule as it applies generally to discrimination on the basis of gender identity rather than tailoring relief more narrowly to focus on the States' asserted harm:  the provision of gender-affirming medical care.

---

[8] The States also claim irreparable harm in the form of "'compliance costs.'" ROA.491-492 (P.I. Motion 22-23).  The only compliance costs that the States identify, however, are tied to changing administrative rules that bar state programs from covering gender-affirming care in order to avoid losing federal funding.  ROA.492 (citing declarations regarding compliance costs); ROA.423-424 (Stephen Smith Declaration ¶¶ 13-14); ROA.428 (Cody Smith Declaration ¶¶ 11-12); ROA.433-434 (Sullivan Declaration ¶¶ 12-13); ROA.438-439 (Brunssen Declaration ¶¶13-14); ROA.73 (Complaint ¶ 201).

**B.     The district court abused its discretion in granting nationwide relief.**

**1.**     Under Article III and fundamental equitable principles, the district court also should have limited the geographic scope of any relief to the named plaintiffs in this case.  Under Article III, "a plaintiff's remedy must be limited to the inadequacy that produced his injury." *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (alteration and quotation marks omitted).  Principles of equity reinforce that constitutional limitation, because equitable relief must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano*, 442 U.S. at 702.  Thus, English and early American "courts of equity" typically "did not provide relief beyond the parties to the case." *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring).

Nationwide relief—whether styled as an injunction or a stay—also creates well-catalogued legal and practical problems.  Such relief circumvents the procedural rules governing class actions, which permit relief to absent parties only if rigorous safeguards are satisfied.  Fed. R. Civ. P. 23.  It enables forum shopping and empowers a single district judge to effectively nullify the decisions of all other lower courts by barring application of a challenged policy in any district nationwide. *Department of Homeland Sec. v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring in the grant of stay).  And it "short-circuit[s] the decisionmaking benefits of having different courts weigh in on vexing questions of law" and overburdens courts' "emergency dockets." *See Arizona*

*v. Biden*, 40 F.4th 375, 395-98 (6th Cir. 2022) (Sutton, C.J., concurring); *see also United States v. Texas*, 599 U.S. 670, 702-04 (2023) (Gorsuch, J., concurring in the judgment).

In line with those principles, the Supreme Court recently stayed a universal injunction based on five Justices' explicit conclusion that such injunctions are likely impermissible. *Poe*, 144 S. Ct. at 927 (Gorsuch, J., concurring in the grant of stay); *id.* at 933 n.4 (Kavanaugh, J., concurring in the grant of stay). And on a separate occasion, three Justices recently admonished that "universal relief … strains our separation of powers" and advised that if "party-specific relief can adequately protect the plaintiff's interests," then "an appellate court should not hesitate to hold that broader relief is an abuse of discretion." *Texas*, 599 U.S. at 703 (Gorsuch, J., concurring in the judgment). This Court has also recognized that universal "injunctions are not 'required or even the norm,' and several justices on the Supreme Court have viewed them with conspicuous skepticism," along with "[s]cholars and judges from our sister circuits." *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 953-54 (5th Cir. 2024) (footnote omitted) (quoting *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (per curiam)).

**2.**    Accordingly, another district court considering a challenge to the Section 1557 Rule rejected a request for nationwide relief. *See Florida v. HHS*, __F. Supp. 3d__, No. 8:24-cv-1080-WFJ-TGW, 2024 WL 3537510, at *20 (M.D. Fla. July 3, 2024) ("A nationwide injunction issuing from a District Court ought to be the rare exception, not routine."). Similarly here, those Article III and equitable principles required limiting any relief to the 15 plaintiff States in this action. In entering broader relief, the district

court did not conclude that a nationwide scope of relief was necessary to redress the States' asserted injuries. *See* ROA.610-611. Nor did the court even acknowledge the possibility of limiting the scope of its preliminary injunction, in particular, to the plaintiff States. The court thus abused its discretion in failing to tailor the geographic scope of relief to the injuries asserted by the plaintiffs.

**3.** In addressing the geographic scope of its relief, the district court focused solely on its stay of the Rule's effective date under 5 U.S.C. § 705. The court noted that "'[n]othing in the text of Section 705 … suggests that either preliminary or ultimate relief under the APA needs to be limited to' the plaintiff." ROA.610 (quoting *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024)). And the court thus concluded that it would impose a "nationwide stay of the effective date of the [Rule]," ROA.611, without any explanation as to why a stay limited to the 15 plaintiff States would be inadequate to remedy their asserted injuries.

To the extent the district court was suggesting that a stay under § 705 must always be nationwide, that is incorrect. Even assuming that § 705 permits universal relief in some cases, there is no basis to conclude that it authorizes *only* universal relief. The Supreme Court recently instructed that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024). In *Starbucks*, the Supreme Court explained that it did "not

understand the statutory directive [before it] to grant relief when the district court 'deems' it 'just and proper' to jettison the normal equitable rules." *Id.*

The reasoning in *Starbucks* applies with equal force to § 705. By providing that a reviewing court, "to the extent necessary to prevent irreparable injury," "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings," § 705 explicitly incorporates traditional equitable principles. 5 U.S.C. § 705; *see Alliance for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 241-42 (5th Cir. 2023) (explaining that the "preliminary-injunction factors apply" to "a stay under 5 U.S.C. § 705," which "has the practical effect of an injunction"), *rev'd on other grounds*, 602 U.S. 367 (2024). And one such principle of "equity jurisprudence," as discussed above, is that any court-ordered relief "should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *Califano*, 442 U.S. at 702 (emphasis added); *see Louisiana*, 20 F.4th at 263 (noting that nationwide injunctions are not "required or even the norm"). The House Report that accompanied the APA thus explained that the relief authorized by § 705 "is equitable" and "would normally, if not always, be limited to the parties complainant." H.R. Rep. No. 79-1980, at 43 (1946).

Even assuming that "preliminary relief under Section 705" need not be "party-restricted," ROA.610 (quoting *Career Colls.*, 98 F.4th at 255), that proposition by no means requires that § 705 relief must always be universal, *i.e.*, that § 705 forbids relief

limited to the parties before the court.[9]  To the contrary, courts can grant party-specific preliminary relief in APA cases.  *See Florida*, 2024 WL 3537510, at *20 (limiting preliminary injunction and § 705 stay to state of Florida); *Ryan LLC v. FTC*, __F. Supp. 3d__, No. 3:24-cv-00986-E, 2024 WL 3297524, at *16 (N.D. Tex. July 3, 2024) (limiting preliminary injunction and § 705 stay to the plaintiffs).  But the district court failed to recognize or acknowledge its authority to enter relief limited to the 15 plaintiff States here, much less explain why it was entering nationwide relief under the circumstances. In doing so—and entering relief much broader than necessary to remedy the States' asserted injuries—the district court thus abused its discretion.

---

[9] The proposition that relief under § 705 of the APA need not be party-specific hinges on the assumption that 5 U.S.C. § 706 authorizes courts to vacate agency rules, and that such vacatur has universal effect.  *See Career Colls.*, 98 F.4th at 255.  It is the federal government's view, however, that the APA does not authorize universal vacatur at all.  *Accord Texas*, 599 U.S. at 693-99 (Gorsuch, J., concurring in the judgment); *see VanDerStok v. Garland*, 86 F.4th 179, 197 (5th Cir. 2023) (suggesting rules may be vacated in part), *cert. granted*, 144 S. Ct. 1390 (2024).

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's preliminary injunction and stay order. Alternatively, this Court should narrow the scope of relief to the 15 plaintiff States and to their specific asserted injuries related to gender-affirming medical care.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

CHARLES W. SCARBOROUGH

 /s/ McKaye L. Neumeister
McKAYE L. NEUMEISTER
*Attorneys, Appellate Staff*
*Civil Division, Room 7231*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8100*
*McKaye.L.Neumeister@usdoj.gov*

November 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

*/s/ McKaye L. Neumeister*
McKaye L. Neumeister

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9863 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.


_/s/ McKaye L. Neumeister_
McKaye L. Neumeister

**ADDENDUM**

## TABLE OF CONTENTS

42 U.S.C. § 18116 ..................................................................................A1

20 U.S.C. § 1681 ...................................................................................A1

5 U.S.C. § 705.........................................................................................A2

**42 U.S.C. § 18116**

**§ 18116. Nondiscrimination**

**(a) In general**

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

**(b) Continued application of laws**

Nothing in this title (or an amendment made by this title) shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 794 of Title 29, or the Age Discrimination Act of 1975, or to supersede State laws that provide additional protections against discrimination on any basis described in subsection (a).

**(c) Regulations**

The Secretary may promulgate regulations to implement this section.


**20 U.S.C. § 1681**

**§ 1681. Sex**

**(a) Prohibition against discrimination; exceptions**

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that:

* * * *

**5 U.S.C. § 705**

**§ 705. Relief pending review**

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.